UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MICHAEL DUNN, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 11-10672-DPW |
| v. | ) | |
| | ) | |
| TRUSTEES OF BOSTON UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM AND ORDER
September 16, 2013

This is an action alleging age discrimination under
Massachusetts state law.  In 2010, Defendant Boston University
restructured and consolidated the various groupings providing its
IT services. As part of that restructuring, the University
conflated two positions, one held by Michael Dunn, who was 47
years old at the time, the other held by Jill Beckman, who was 29
years old at the time.  The University elected to lay off Mr.
Dunn, and retain Ms. Beckman.  Mr. Dunn alleges that the
University based its decision on his age and its desire to
project a "new youthful image."

The University moves for summary judgment arguing that it
laid off Mr. Dunn as part of the restructuring in order to
consolidate a fractured, scattered IT department and that there
is no evidence that age played a role in its decisions.  Mr. Dunn
contends that the University's discriminatory animus is evident
from its decision to lay him off in favor of Ms. Beckman, a

younger employee who Mr. Dunn asserts was less qualified for the position.

## I.   BACKGROUND

### A.   Facts

Between 2008 and 2010, Boston University determined that its Information Services and Technology departments ("IS&T") were fragmented into multiple groups with overlapping responsibilities and no clear reporting structure or effective cross-communication.  It retained the consulting firm Huron Group to review the problem.  The Huron Group issued a report as well as recommendations for improving and consolidating the departments. During this time, the IS&T departments underwent a variety of structural changes, culminating with the consolidation of Mr. Dunn's position and that of Ms. Beckman into a single job and Mr. Dunn's termination.

Boston University first hired Mr. Dunn in 1992.  He earned a degree in computer engineering from the University of Massachusetts in 1987.  He became the Manager of Network Services in 1994, and then the Assistant Director of Distributed Computing in 2001.

Boston University first hired Ms. Beckman in 2001 as a repair services technician at "University Computers," the retail computer store for the University which offered a depot for technical repair services before it closed in 2009.  Ms. Beckman

2

became acting Manager of Technical Services in 2006.  Ms. Beckman
has a degree in music synthesis from Berklee College of Music, a
course of study she testified included "[m]any . . . classes
[that] were quite advanced technically" including "programming"
and "moving files across [Macintosh and PC OS] platforms."  She
graduated from Berklee in 2002.  She testified that after
graduation she began to pursue a Masters Degree, taking night
classes at Boston University.  She further testified that she
took classes in advanced programming, databases, discrete math,
operating systems, and others, but has not yet completed her
degree.

When it began its restructuring, the University created a
new entity called the IT Help Center in order to consolidate the
various IT&S departments, and in July 2009, hired Tracy Schroeder
(age 38) as the Vice President of IS&T to oversee the
restructuring and manage the new department.  Ms. Schroeder
eliminated the Distributed Computing department in October 2009
and reassigned all its staff to the IT Help Center while she
eliminated the associated Distributed Computing Director and
Assistant Director positions.  Mr. Stephen Rosman (age 59), who
held the Director position at the time, was laid off.  Mr. Dunn,
who held the Assistant Director position at the time, was not
laid off, but was transferred to the IT Help Center with a title
demotion from "Assistant Director" to "Manager."  His salary and

benefits remained the same.  Prior to this transfer, Mr. Dunn supervised employees in two groups: Microcomputer Support and Network Services.  After the transfer, Mr. Dunn continued to supervise the Microcomputer Support group, but the Network Services employees were transferred to the Systems Group, reporting to Matt Kramer.  Approximately two months later, when the Manager of ISPS (although not defined in the record before me, presumably denoting internet services provide, support), Matt Sandonato, gave his two-weeks notice and left Boston University, Mr. Dunn took over managerial responsibilities for his employees.

Ms. Schroeder hired Stacy Gianoulis (age 51) - formerly the Manager of University Computers, as the Director of the IT Help Center in February 2010.  Ms. Schroeder and Mr. Gianoulis organized the IT Help Center's desktop computer support services into two groups: (1) Field Support, providing technical assistance to users in their offices, and (2) Central Support, operating a central location where users could bring their computers for repair and technical support.  Mr. Dunn was the Manager of Field Support.  Ms. Beckman was the Manager of Central Support.

Mr. Gianoulis and Ms. Schroeder finalized their restructuring plan in May 2010.  As part of this plan, the University consolidated the separate Field Support and Central Support positions into the single position of Manager, Desktop

4

Services.  Ms. Beckman took over that position and Mr. Dunn was laid off receiving severance.  In associated action, the University also promoted John Bodi (age 45), Tracy Cheecks (age 45), and Joe Salmeri (age 40); meanwhile Carmela Galeno (age 60) and Jack Chan (age 43) received title demotions.

The University gave Mr. Dunn notice of his termination and severance.

Mr. Dunn alleges that Mr. Gianoulis made a telling ageist comment on or about April 22, 2010, during the end of development of the first restructuring plan.  Mr. Dunn testified that Mr. Gianoulis discussed the position of Service Desk Manager with him by phone, telling Mr. Dunn he "wouldn't be interested in it [because] he [was] really looking for a younger person in that role."[1]

**B.   *Procedural History***

Mr. Dunn initially filed his claims as a complaint with the Massachusetts Commission Against Discrimination ("MCAD") on November 8, 2010. He thereafter filed this civil action while the case before MCAD was still pending.  On April 29, 2011, MCAD granted Mr. Dunn's request to withdraw the administrative

---

[1] I note Mr. Dunn did not attribute any specific animus to Mr. Gianoulis.  He testified, "I don't believe Mr. Gianoulis harbored any bad ill will toward me in general."  (*Id.* at 121-22.) The parties also acknowledge that Mr. Gianoulis and Ms. Beckman had a romantic relationship in 2007-2008, but neither party alleges that the relationship is ongoing or that it played a role in the employment decisions.

complaint.  He filed his civil action in Massachusetts Superior
Court on March 21, 2011 alleging violations of both federal and
state anti-discrimination laws.  Count I of the complaint alleged
violation of the Age Discrimination in Employment Act ("ADEA"),
29 U.S.C. §§ 621.  Count II alleged violation of the
Massachusetts Fair Employment Practices Act, M.G.L. 151B, §4.

Boston University removed the case to this court on April
19, 2011 based upon the allegations raising federal question
jurisdiction over the ADEA claim.  Preferring not to be in
federal court, Mr. Dunn moved to dismiss his ADEA claim
voluntarily and sought remand to the state court for adjudication
of his state law claim.  He emphasized his motion for dismissal
of the federal claim and remand by stating "Plaintiff recognizes
. . . that the standard on summary judgment for discrimination
claims arising under federal law is significantly less liberal
than the standard on summary judgement for discrimination claims
arising under state law."  Because such forum shopping is clearly
improper as a matter of established Supreme Court law, *see*
*Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 357 (1988), I
granted the motion voluntarily to dismiss the federal claim, but
retained supplemental jurisdiction over the state law claim,
denying the motion for remand.

## II.   STANDARD OF REVIEW

A movant is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party," and "[a] fact is material if it has the potential of determining the outcome of the litigation." *Farmers Ins. Exch.* v. *RNK, Inc.,* 632 F.3d 777, 782 (1st Cir. 2011) (citation omitted).

I "view the facts in the light most favorable to the party opposing summary judgment." *Rivera–Colón* v. *Mills,* 635 F.3d 9, 10 (1st Cir. 2011). However, "conclusory allegations, improbable inferences, and unsupported speculation" are insufficient to create a genuine issue of material fact to survive summary judgment. *Sullivan* v. *City of Springfield*, 561 F.3d 7, 14 (1st Cir. 2009) (quotation and citation omitted).

## III. DISCUSSION

A claim for age discrimination under M.G.L. 151B has four elements: "membership in a protected class, harm, discriminatory animus, and causation." *Sullivan* v. *Liberty Mut. Ins. Co.*, 825 N.E.2d 522, 530 (Mass. 2005). The burden of proof on an age discrimination claim follows the three-stage procedure that the Supreme Court first set out in *McDonnell Douglas Corp.* v. *Green*,

411 U.S. 792, 802-805 (1973).  *See Sullivan*, 825 N.E.2d at 530.
The plaintiff must first establish a prima facie case; the burden
then shifts to the defendant who must set forth some permissible
and lawful reason for its employment decisions along with
credible evidence in support; finally, the burden shifts back to
the plaintiff to adduce evidence of pretext. f *See McDonnell
Douglas*, 411 U.S. at 802-805.  The evidence of record
demonstrates Plaintiff is unable to establish a prima facie case.

A prima facie case for age discrimination requires that the
University's actions "if otherwise unexplained, are more likely
than not based on the consideration of impermissible factors."
*Furnsco Constr. Corp.* v. *Waters*, 438 U.S. 567, 577 (1978); *see
also Somers* v. *Converged Access, Inc.*, 911 N.E.2d 757 (Mass.
2009).  In order to meet this standard, Mr. Dunn must show "[1]
that [he] is a member of a class protected by G.L. c. 151B; [2]
[he] performed [his] job at an acceptable level; [3] [he] was
terminated; and [4] [his] employer sought to fill [his] position
by hiring another individual with qualifications similar to
[his]." *Sullivan*, 825 N.E.2d at 531.  The burden to show a prima
facie case is "not onerous." *Tex. Dep't of Cmty. Affairs* v.
*Burdine*, 450 U.S. 248, 253 (1981).  It is merely a "small
showing" that is meant to be "easily made." *Che* v. *Mass. Bay
Transp. Auth.*, 342 F.3d 31, 38 (1st Cir. 2003).

The parties do not dispute the first three elements. These factors are rarely in question in the layoff context. *See Sullivan* 825 N.E.2d at 531 ("[I]t is likely that in a reduction in force case every plaintiff claiming sex or age discrimination can easily satisfy the first three elements of the prima facie case."). Mr. Dunn was 47 when Boston University laid him off and Massachusetts law treats people over the age of 40 as members of a protected class. *See id.* at 537 ("We conclude that Sullivan has established a prima facie case of age discrimination . . . particularly when . . . five of the six attorneys [defendant] discharged were over forty years of age . . . ."). Mr. Dunn's performance reviews show him to have been held in high regard, and the notice of his termination sent to the other members of the IT Help Center thanked him for his help and support during the transition. However, layoff or "reduction in force" cases require a more nuanced analysis of the fourth factor.

A "reduction in force" occurs when "business considerations cause an employer to eliminate one or more positions within the company," but the company continues to perform the same work. *LeBlanc* v. *Great American Ins. Co.*, 6 F.3d 836, 845 (1st Cir. 1993) (internal quotations omitted). Because the fourth factor – requiring a showing that the defendant hired another individual into Plaintiff's position – is "nonsensical" in the reduction in force setting where Plaintiff's position is by definition

9

eliminated altogether, *Sullivan,* 825 N.E.2d at 531, Massachusetts courts have held that a plaintiff can satisfy this fourth factor by producing "some evidence that [his or] her layoff occurred in circumstances that would raise a reasonable inference of unlawful discrimination." *Id*. at 533-34.

## A.   *"A Continuing Need"*

Mr. Dunn takes the untenable position that he may satisfy the fourth requirement simply by showing that "the University had a continuing need for the type of work that Plaintiff had been performing."  The two cases he relies upon are inapposite.  At the threshold, it is important to observe that neither of these cases - *Rodriguez-Torres* v. *Caribbean Forms*, 399 F.3d 52, 59 (1st Cir. 2005), and *Hidalgo* v. *Overseas Condado Ins. Agencies., Inc.*, 120 F.3d 328, 332-333 (1st Cir. 1997) - addresses Massachusetts law at all.  In *Hidalgo*, the First Circuit construed only a federal ADEA claim and Puerto Rico anti-discrimination law.  *See Hidalgo*, 120 F.3d at 331.  Similarly, in *Rodriguez-Torres,* the First Circuit reviewed claims under Title VII and Puerto Rico anti-discrimination law.  *See Rodriguez-Torres*, 399 F.3d at 55.

Although Mr. Dunn accurately quotes language from the First Circuit decision in *Rodriguez-Torres* stating that "evidence that plaintiff's job functions were absorbed by several different employees of defendant was sufficient to establish the fourth prima facie element," *see Rodriguez-Torres*, 399 F.3d at 59

10

(internal quotation marks omitted), he ignores both the fact that this language did not construe Massachusetts law and the court's express caveat that:

> [o]ur discussion here is limited to stating the proper standard for the replacement element of the prima facie case in a wrongful termination action. . . . [A]n employer may justify a termination as non-discriminatory on the ground that it dismissed the employee because the other existing employees could adequately perform the plaintiff's work.  Ramallo, however, has not advanced such an explanation for Rodriguez's termination.

*Id.* at 59 n. 5.  The court's holding reversed the district court's erroneous jury instruction that "the prima facie case is not satisfied merely because another employee is assigned to perform plaintiff's duties in addition to his/her own duties" and clarified that "the jury should not have been instructed that Rodriguez had to prove that Ramallo hired a new employee or designated a current employee as Rodriguez's replacement in order to satisfy the fourth element of the prima facie case."  *Id.* at 59.  Therefore, even if *Rodriguez-Torres* applied to Massachusetts law, it would not stand for the proposition that "evidence that plaintiff's job functions were absorbed by several different employees" is *alone* sufficient to satisfy fourth prima facie factor.  The record before the court in *Rodriguez-Torres* included significant evidence of discriminatory animus in the form of statements by the plaintiff's supervisor that "women were good for nothing, and that is why he wanted to have male employees"

and that "men do their work better than women."
*Rodriguez-Torres,* 399 F.3d at 57.

The seminal case from the Massachusetts Supreme Judicial
Court regarding the issue confirms the approach taken by the
First Circuit in *Rodriguez-Torres* regarding absorption of job
function and flatly forecloses Mr. Dunn's efforts at
reinterpretation of the standard.  In *Sullivan,* the SJC held that
"[t]he mere termination of a competent employee when an employer
is making cutbacks due to economic necessity is insufficient to
establish a prima facie case."  *Sullivan*, 825 N.E.2d 522.  This
approach is understandable.  If a plaintiff could satisfy the
fourth factor simply by showing that he was laid off while his
employer had "a continuing need" for the type of work the
plaintiff performed, then every instance of a reduction in force
– even those conducted in a manner beyond reproach – would
automatically constitute a prima facie case.  *Id.* at 531 ("[I]t
cannot be that every individual in the workforce who falls within
some protected class (the overwhelming majority of employees) can
establish a prima facie case of *discrimination* simply because she
is laid off during a reduction in force." (emphasis in
original)).  Under Mr. Dunn's interpretation, the first stage of
the *McDonnell Douglas* burden shifting analysis would lose all
meaning, and the prima facie case requirement would cease to
serve the "important function" it is intended to serve: to

12

"eliminate[] the most common nondiscriminatory reasons for the plaintiff's rejection." *Id.* at 530 (quoting *Tex. Dep't of Cmty. Affairs* v. *Burdine,* 450 U.S. 248, 254 (1981)).

**B.    *Retention of an Employee Outside the Protected Class***

Nor is it necessarily sufficient for the plaintiff to show "the employer's retention in the plaintiff's same position of an employee who is outside the plaintiff's protected class." *Id.* at 533.  In some instances, retaining employees outside the protected class might alone be sufficient to raise an inference of discrimination, such as if an employer lays off the only male employee when the other five employees who hold the same position are female. *Id.* at 533 n.14.  However, in other instances - such as this case - where the employer laid off one of only two individuals, the fact that the retained employee is outside the protected group is simply not enough evidence to distinguish a termination based on discrimination from one based on "lower proficiency and/or random chance." *Id.* at 533 (internal quotations omitted).  Therefore, in order to satisfy the fourth part of his prima facie case, Mr. Dunn must "produce some evidence that [his] layoff occurred in circumstances that would raise a reasonable inference of unlawful discrimination." *Id.* at 533-34; *see also Lewis* v. *City of Boston,* 321 F.3d 207, 215-16 (1st Cir. 2003) (holding in the context of M.G.L. 151B that "[m]erely demonstrating that, as a result of the reduction in

13

force, the employer consolidated positions or allocated duties of discharged employees to other existing employees does not itself raise a reasonable inference that the employer harbored discriminatory animus toward any one employee.  Accepting [such an] argument would render meaningless the fourth requirement of the prima facie case . . . . [T]he employee must come forward with something more than evidence of the inevitable transfer of his or her responsibilities to existing employees" (internal quotations omitted)).

Mr. Dunn has produced no such evidence or argument with respect to his prima facie case.  He relies exclusively on his inadequate notion that he may satisfy his burden by showing that the university had a continuing need for the type of work he performed.  This alone would be sufficient to grant Boston University's motion for summary judgment.  However, because the burden of establishing a prima facie case "is not intended to be onerous," *id.* at 530 (quoting *Tex. Dep't of Community Affairs,* 450 U.S. at 254), I consider all the evidence in the record to determine whether Mr. Dunn *could* satisfy his burden.  I find that he cannot.

## C.   *Evidence In the Record*

Mr. Dunn presents two categories of evidence that he believes substantiate his claim of age discrimination.

*First*, Mr. Dunn argues that he was better qualified for the Manager of Desktop Services position than Ms. Beckman.  The job description states that "Manager, Desktop Services" must have a "BA or BS or equivalent work experience" and "7+ years experience in the field with continual professional growth and responsibilities."  It further states that the position requires "[e]xperience with staff supervision," "[f]amiliarity with IT Service Management processes, particularly Incident Management," "[k]nowledge of computer operating systems, hardware, and applications," "[p]roficien[cy] with online and other resources for software and hardware research and troubleshooting," among other skills.  Mr. Dunn is clearly qualified for the position, having served in the role of Assistant Director of Distributed Computing for more than nine years alone, independent of his other relevant work experience.  However, Ms. Beckman meets the qualifications and skill requirements for the position as well. She has worked in various capacities for Boston University's IS&T departments for nine years doing hardware repair and support as well as software support.  Her job has also included employee management since 2006.  Both Mr. Dunn and Ms. Beckman meet the stated objective qualifications for the position, and Mr. Dunn's subjective belief that he is *more* qualified is not the kind of evidence which "if otherwise unexplained, [shows that the University's decision was] more likely than not based on the

consideration of impermissible factors." *Furnsco Constr. Corp.*, 438 U.S. at 577.   Years of experience is only one factor among many that affects an employment decision.   Even if left unexplained, the fact that the University retained the less experienced candidate is not an indication of age bias.   Nor is the fact that Ms. Beckman graduated from Berklee with a degree in music synthesis – which Plaintiff relies on heavily - enough to raise the specter of discrimination.   A difference in college attended "is insufficient to establish that the plaintiff was more or equally qualified for the job, especially when many years have passed since their graduation and each had substantial work experience . . . ."   *Somers*, 911 N.E.2d at 752.

*Second*, Mr. Dunn testified in his deposition that Mr. Gianoulis, the Director of the IT Help Center, spoke with him on the phone on April 22, 2010, and stated that the University would be looking for a "younger person" to fill the upcoming role of Manager, Service Desk.   This statement cannot be evidence of discrimination in the decision to terminate Mr. Dunn because it does not relate to Mr. Dunn's termination, but to hiring for different, significantly more junior position.   Mr. Dunn cannot show "circumstances that would raise a reasonable inference of unlawful discrimination" in the decision to lay him off through statements unrelated to his termination.   *See id*. at 753 ("[S]tatements made by decision makers unrelated to the

16

decisional process itself do not suffice to satisfy the plaintiff's threshold burden in these cases." (quoting *Wynn & Wynn, P.C.* v. *MCAD*, 729 N.E.2d 1068 (Mass. 2000)). Furthermore, such a single, stray remark is insufficient as a matter of law to satisfy a plaintiff's burden of persuasion. *Woodward* v. *Emulex Corp.*, 854 F. Supp. 2d 149, 157 n.14 (D. Mass. 2012) (collecting cases); *Sullivan*, 825 N.E.2d at 536, n.24 (finding ageist comments "you are part of the old guard. You have never adapted to the new system at Liberty Mutual. You simply do not fit in around here anymore" insufficient to support a claim for age discrimination); *Lee* v. *President & Fellows of Harvard Coll.*, 806 N.E.2d 463 (2004) (finding ageist comment "younger is cheaper" insufficient to support an claim for age discrimination). Mr. Dunn's reliance on *Diaz* v. *Jiten Hotel Mgmt., Inc.*, 762 F. Supp. 2d 319 (D. Mass. 2011) *id*. at 339 to argue that Mr. Gianoulis's single comment is not a "stray remark" but rather a "window into the soul" *id*. at 323 is unconvincing. In *Diaz*, Judge Gertner in dicta questioned the development of the "stray remark" doctrine in the course of finding more than sufficient evidence to substantiate the prima facie case based on multiple, clearly ageist statements.

The circumstances surrounding Mr. Dunn's layoff are further incapable of raising a reasonable inference of age discrimination in light of the other aspects of the IT department restructuring.

The same email announcing Mr. Dunn's layoff from Boston University also announces the retention or promotion of eight individuals other than Ms. Beckman, five of whom - the majority - are also members of the protected class and two of whom actually older than Mr. Dunn himself.  *See Somers*, 911 N.E.2d at 753 (finding no prima facie case where a majority of the retained employees were within the protected class).  Mr. Dunn's assertion that the University operates under a general policy of age discrimination is also implausible in light of the fact that Ms. Schroeder hired Mr. Gianoulis, who is older than Mr. Dunn, to be director of the IT Help Center three months before Mr. Dunn was laid off.

Mr. Dunn has therefore failed to meet his threshold burden of establishing a prima facie case for age discrimination.  He offers no evidence of age bias or suspicious circumstances related to his termination and therefore fails even to make the requisite "small showing," which, if left unexplained, would indicate that the decision to lay him off was motivated by impermissible considerations.  I therefore need not reach stages two or three - non-discriminatory reasons and pretext - of the *McDonnell Douglas* analysis.

## IV.   CONCLUSION

For the foregoing reasons, I GRANT Defendant's motion for summary judgment (Dkt. 18).


                                        ***/s/ Douglas P. Woodlock***
                                        DOUGLAS P. WOODLOCK
                                        UNITED STATES DISTRICT JUDGE